John Conley on behalf of the appellant, Chad Biggs. With the court's permission, I'd like to reserve five minutes for rebuttal. May it please the court. Fundamentally, this appeal raises the issue, is the attorney-client relationship an intimate association warranting the protections of the 14th Amendment, or, as the district court determined, is the relationship between an attorney and his or her client akin to that of a prostitute and a customer. It is our contention that the sacrosanct relationship between an attorney and a client is one of intimate association. Wouldn't you think it's more intimate the other way? Your Honor. Well, that is not entirely facetious. The real problem or issue for you is whether it is an intimate relationship, as opposed to maybe a constitutional or a critical or very significant relationship, but not intimate in the sense it's been used in the 14th Amendment. That's the issue, really. I agree. I agree, Your Honor. What is the best case you have where that relationship was upheld as intimate, as opposed to cases that rejected a relationship but described an intimate relationship? Yes, sir. There is no reported case in this circuit. I didn't say well. Any circuit? Yes, sir. The Sixth Circuit Court of Appeals in Johnson v. Cincinnati disposed of the issue quite quickly, quite swiftly. Similarly, you would say, without setting a case. Well, in that opinion, the court spent a great deal of time analyzing whether the litigant in that case had his constitutional rights violated by not being able to access his attorney because of an ordinance that had been put in place. And the court said, essentially, this is a no-brainer. Yes, absolutely. Absolutely. The inability to access your attorney, the inability to engage in that intimate relationship, is a 14th Amendment violation. So you see these cases as similar to or in parallel with or absolutely identical to? I think it's similar to, Your Honor. I mean, in that case, it was something that was sort of prospective, I guess, or prescriptive. In this case, we're talking about retaliation that occurred because my client, Chad Biggs, was trying to exercise his right to associate with his attorney. And as the court knows, in its decision in the IDK case, this court found that the relationship between a client and a prostitute was not intimate, at least not intimate enough to warrant the protections of the 14th Amendment. And that's because we look at the factors that this court set forth in IDK. How many folks are involved in the relationship? Two, of course, is the smallest, and that exists in the 14th Amendment. In this case, but then after that, the relationship between an attorney and a client becomes very different than a prostitute and a john. The relationship between an attorney and a client can last a lifetime or more, whereas the relationship between a prostitute and his or her customer is going to, in most cases, be very brief. The relationship between... May be brief, but repeated. I suppose, Your Honor, I suppose. But, you know, it requires an analysis of all of the factors that this court discussed in the IDK case, and then a look along the continuum between a purely business relationship with a large organization, which is entitled to no constitutional protection, and, you know, at the other end of the spectrum, a family relationship, which is entitled to the greatest constitutional protection. And along that continuum, the attorney-client relationship has to fall somewhere. Well, that's right. It may have to fall somewhere. One of the problems with constitutional analysis is we establish these cubbyholes, and we have to put the peg in the right hole, and there may be a violation, but a violation of what? And there are three possible, I guess, parts of the Constitution you could tie this to. One is the intimate relationship, which is not the way I think most of us would like to think of our relationships with our lawyers. But that's one. One is the First Amendment relationship. One is a due process label you could attach to something. And if the state would interfere with your relationship with your lawyer or retaliate, you might call that a due process relationship. Or you could say maybe 14th Amendment or First Amendment, and it's a rather comparatively novel problem, but you've got to put that peg in the right hole. And one question is, is the 14th Amendment the place to place this relationship that you contend the state is interfering with? Is the state violating your due process rights, or is it a question of interfering with an intimate relationship? I think you're correct in that the Sixth Circuit, I think the only court, probably, that ever said that this was a 14th Amendment violation. And facts. That's why I was asking you how you compared the facts. You have an unusual set of facts. Do you think so? I have a different set of facts than the Sixth Circuit was addressing. That's why I asked you if you thought it was identical, similar, and you answered similar. So that's about as close as I think you can get it. Yeah, I don't think the facts are necessarily similar, but I think the issue is similar. Quite often the facts determine the issue. Well, that's true. And in this case, I think our facts are better for this issue because, in this case, Mr. Biggs had an absolute right to speak with his lawyer, and it was something that was part of the collective bargaining agreement. And, you know, I can't remember the name of the case, but this court has recognized in the past that, you know, once an employer enters into the collective bargaining agreement and part of that is that you're entitled to a lawyer, they can't argue anymore that that's not a right that you have. So, you know, in this case involving the violation of a collective bargaining agreement. It's not, Your Honor. I was just merely mentioning that to show that the relationship between Chad Biggs and his lawyer is one that even the employer has recognized as something that exists and is important. And I think to answer your question about which cubbyhole should we put this in, to me, Your Honor, that's, you know, it's in the J.C.'s case where the court said an intimate relationship is one where the role of such relationships is in safeguarding the individual freedom that is central to our constitutional scheme is one that warrants protection. I think we would be hard-pressed to find any relationship that protects the constitutional scheme greater than the attorney-client relationship. We would not even be having this argument. We wouldn't have a 14th Amendment, arguably, but for the attorney-client relationship. That is how baked into the constitutional scheme that relationship is. And, again, that's exactly what the Sixth Circuit in Johnson v. Cincinnati found quite obvious. And I wouldn't say that they summarily decided it. I would say they obviously decided it. And what we believe was the real error here was that the trial court simply said that an attorney-client relationship started long before. You go ahead with the argument, but you know where the real error started, and that's why I ask you about the facts. Of course, Mr. Biggs got into difficulty because Mr. Biggs decided he had some obligation that he may not have had. Well, that issue, Your Honor, was decided by the county attorney who found that it was a good shooting. No shooting is good, but that's the term that they used. And also by the police standards and training board in Arizona. They also found that Mr. Biggs engaged in a misconduct. And in your view, that's the final word? In your view, that is the final word on the subject? Well, I don't think anybody has argued since that Mr. Biggs, other than the folks that were retaliating against him. I don't think anybody has argued since that Mr. Biggs violated any law or rule in the manner that he handled himself that evening with respect to the shooting. So I'll reserve the rest of my time for a rebuttal if I may. Thank you. May it please the Court. My name is Kim Alvarado. I represent the town of Gilbert and the nine officers that have been sued by Mr. Biggs in this case and their spouses. I think the recent Ninth Circuit case in Pickup really establishes what this circuit's analysis is of intimate relationships under the 14th Amendment. Specifically, Pickup involved a professional relationship. It involved a professional relationship between a therapist and a client. And the issue in that case was the therapist counseling these minor clients on their sexual orientation. But obviously, that would be considered an extremely personal, intimate, highly private issue that would be discussed with your therapist. And yet this Court just recently held that that was not an intimate relationship under the 14th Amendment due process clause. Well, what clause do you think this violates? Assuming that the – were we at the motion-to-dismiss stage in this? This was a motion for judgment on the pleadings, 12C. Yeah. So let's assume everything in the pleadings. And let's assume that the State retaliated or the City retaliated against the plaintiff because he consulted a lawyer. You say that wouldn't be a violation of the 14th Amendment? Correct. He could possibly have a First Amendment claim. And that's what he – that was the first argument he made. May I ask you, you think that would be a First Amendment claim? It could possibly be if it satisfies the Pickering test. Well, that's a different question. But you think that if the City could discipline him for going to see a lawyer if it had to do with a matter that wasn't a matter of public interest? Well, it's not a matter of disciplining him. There was no question of discipline. Well, retaliating. Right. He's making the allegation that it was retaliation in the context of the City's internal investigation of a shooting and whether the shooting violated any internal general orders. And if he went to see a lawyer to ask about his rights under those circumstances, the City could retaliate against him? In this case, we would say there would be no Section 1983 claim available for such a – for such a – for such a theory. There's no – there's no cognizable one. I'm not sure that that's an answer to – first, I thought you were saying that this would be, if it were anything, would be a First Amendment claim. Right. What this – what this circuit – the circuit has held is that – that in the – especially in the context of an employee exercising their First Amendment freedoms, and that's association, speech, and petition, it's – they may have First Amendment rights if they satisfy the Pickering test. Those cases say if it doesn't satisfy the Pickering test, then the First Amendment never attaches. Well, it hasn't said that about the right to consult a lawyer. I'm sorry, I didn't – I can't – It hasn't said that about the right to consult a lawyer. Well, the Merrifield case did in the Tenth Circuit, and I think the recent Supreme – So we should choose between the Tenth and the Sixth. Well, I – the Sixth Circuit case didn't deal with employee retaliation claim. It's not an employee retaliation claim at all. At least Merrifield is. I don't want to keep you too long on which part of the Constitution this would violate, but you want to address the Fourteenth? Well, that's the only claim that's left. I mean, as the – as the defendant, I can only respond to what's being asserted in this case. What's – Why shouldn't we follow this Johnson versus Cincinnati? Well, I think it would be inconsistent with pickup. It's also – and it's – I don't think the Ninth Circuit, and certainly the Supreme Court, has never held that a professional relationship of any kind, let alone an attorney-client relationship, is an intimate association. Again, going back to the language in that Roberts case, which was recognizing what intimate relationships were, they talk about these relationships are entered into for the purpose of emotional enrichment. There's personal bonds between the people in the relationship. And, of course, most of the time these have been held applicable to obviously the creation of a family, whether it's parent-child, spouses, things like that. It also involves the participants to this relationship sharing thoughts, beliefs, and experiences. Sharing. The attorney-client relationship, as you know, is similar to the therapist-client relationship, is one way. The attorney has been hired to assist the client with a legal dispute, and the attorney's been hired based on their skill set and qualifications. For example, if you had a bankruptcy dispute or a water dispute, I would not be the attorney you should hire for that. I would not have the appropriate skill set to assist you with that problem. But the client is seeking that assistance, and the information sharing is usually one way. I mean, obviously it's a confidential relationship, but the client is not there to share experiences, you know, common experiences with the attorney in that sense. It's certainly not for the emotional enrichment of either to the relationship. This is a, as Pickup just talked about, the purpose of these professional relationships is to advance the welfare of the clients. So that has just never been extended to the 14th Amendment due process analysis. If the court were to recognize such a claim, essentially all public employees would essentially circumvent the entire Pickering analysis and circumvent the entire First Amendment analysis, because, you know, why wouldn't you? At least if you go the First Amendment route, you have to prove that you are speaking as a private citizen on a matter of public concern. And, of course, in this case, the plaintiff has never argued that he could meet that test at all. Well, that's assuming that the Pickering test applies to the right to consult counsel, which is a little different from the right to speak about your job. Your right to find out what your rights are may not be limited to by the same standards as your right to make public speeches criticizing your department. Right. Well, but I think the Pickering analysis, though, applies in the public employment retaliation context. How does an employee know what the Pickering test is and whether it applies and what its rights are unless he can ask a lawyer? Well, again, no one's saying that an employee can't ask a lawyer about anything. Any of us can ask a lawyer about anything. No, but his job. Can he go to a lawyer and say, look, what are my rights in my job? I don't know why he couldn't, but are you saying would that be constitutionally protected and would he be able to sue? Yes. Would it be protected against retaliation by the state? Again, it would depend on what the section 1983 claim is. Under this analysis, I would say no. Because it's, again, that's what the whole Borough of Duria case, the Supreme Court case that came out in 2011, they talked about not institutionalizing the employee grievance. And when I talk about institutionalizing the employee grievance, I said, does an employee have a right to go to a lawyer and say, what are my job rights without being retaliated against by the state? And he said, what does Pickering have to do with that? Well, because so far that's the only type of analysis where the right to consult with a lawyer related to public employment has been recognized, at least in this circuit. I mean, now, obviously, there's state law issues. We quoted the state law statutes that talk about, especially when it comes to police officer discipline, police officers consulting with legal counsel and whether they're allowed to be part of the interview and things like that. And as counsel alluded to, there also could be collective bargaining rights. These are issues that are covered in many different courts. I'm asking you about state law or the collective bargaining rights. I'm asking you about whether you believe that under the Constitution, an employee who consults an attorney about his rights may be retaliated against by the state for going to consult an attorney. Under the current state of the law, as it's articulated in both the Borough of Duria and this circuit, I would say no. There's not a constitutional right in that regard. There may be, like I said, other rights. No, don't tell me about other rights. I'm just asking about the Constitution. So your view is that there are no cases that say it is protected. Correct. That's why we're here. Maybe there should be a constitutional right that has not yet been discovered or recognized. Do you know a case that says the state may retaliate against a public employee who consults an attorney? Well, I don't know of any case that says that you may do that. I mean, obviously the Merrifield case from the Tenth Circuit talks about the employee consulting with a lawyer for the purpose of bringing forth an employee grievance and an employee dispute. No, not for the purpose of the employee. To find out what his rights are. And, of course, in this case, Your Honor, the issue is he's saying that he wants legal counsel for the purposes of his employment dispute, for the process that's going to move forward. What I said, but just at the pleading stage, and that one of the things, there were two statements that he claims showed the retaliation. One said that's what he gets for consulting an attorney. You know, he's not a team player. He went to talk to a lawyer. And I guess you could say we can read the Duryea case or whatever case you want saying that we could extend that to say, yes, it's not a violation of his constitutional rights to have the state retaliate against him for consulting an attorney. If that issue is before us. Right. I mean, I think the issue you're honing in on, Your Honor, is covered by First Amendment jurisprudence. The issue here is he just couldn't meet that test, so he's trying to go a different way. That's where he started by saying this may be a violation of the First Amendment. It could, again, if it meets the public citizen, I always get these confused, the private citizen not talking about a matter of public concern. But what the court has said is if it doesn't meet that test, we don't want to constitutionalize every public employee's grievance about I wasn't treated well or this discipline was. No, we're not trying to constitutionalize that. We're saying we're talking about a grievance where a state retaliates against a public employee and says they don't have the right to talk to a lawyer about what their rights are. Well, that's not the allegation in this case either, Your Honor. The reason I think you have the difficulty is because this is dismissal at the pleading stages, and that's why the judge is trying to get you to tell him just exactly what the grievance is. And why that's all right. Well, we can only go based on obviously what's played. What's before us so far as you're concerned? The only issue that's before you is actually a case that really the plaintiff didn't even advance to the district court, which is ironic here. His main arguments below were procedural due process. That was dismissed, and he hasn't challenged that. He also argued First Amendment below. That was dismissed, and he hasn't challenged that. Interestingly, in his response to our motion for judgment on the pleadings, he actually argued that... I thought you'd succinctly give me... Yeah, well, this was an expressive association. He's actually argued sort of in the negative, because he said that when he kind of raised this 14th Amendment claim, we said, well, there isn't a recognized intimate association with a lawyer. Below, he argued, no, no, this was expressive association. And it's only on appeal that he's going to develop this new argument out of whole cloth of that attorney-client relationship should be recognized as... He's raising a constitutional issue. He can raise it at any time. I think you'd agree with that. Well, he made the same argument before Judge Tilburg, didn't he? If you look at his... It's docket 55, page 12, Your Honor, in his response to the motion for judgment of pleadings. He actually argued recognizing the two types of association in the Roberts case, intimate association and expressive association. He said, in this case, clearly the second category of association applies to the attorney-client relationship. And, of course, during the oral argument before the district court, it was never mentioned, because this was a very, very minor kind of throw-in issue. The big issues that were driving the case were procedural due process and First Amendment issues. And he didn't appeal those. He's now appealed this new issue of this intimate relationship. But, again, I think, first of all, there's obviously no Ninth Circuit law holding that a professional relationship, such as an attorney-client relationship, would fall under the rubric of the Fourteenth Amendment as it's been explained in the Roberts case. Thank you. And I believe the court has hit the nail right on the head. Which nail did we hit? What does Chad Biggs do when he is retaliated against for going to speak with an attorney if he doesn't have a constitutional protection afforded to him? Should the employer be given carte blanche to retaliate against him just because he's going to see that attorney in the context of an employment dispute? You know, we're not trying to constitutionalize this either, Your Honor. The Fourteenth Amendment liberty interest here, privacy interest here, is a fundamental interest. It's not an expressive association interest. It's an intimate association interest. What do you see as the narrow issue? I believe the narrow, really, for the purposes of this appeal, I believe the narrow issue is did Judge Teelberg properly analyze this? And I don't think he did. I don't think he made the decision where along the continuum of relationships this particular relationship falls. He simply said it's not a highly intimate relationship, was the words he used. He even made it a little bit more difficult. He said it's not a highly intimate relationship like a familial relationship, therefore no constitutional protection. And that's not what the Supreme Court has said. The Supreme Court has said you have to analyze the relationship and find out where along the spectrum, is the language of the Supreme Court, it falls. Now, of course, our position is it should be way down that end of the spectrum near familial relationships. Because, as I've discussed, the attorney-client relationship, especially in a nation of laws, is, this was said in a different context, but to quote the Supreme Court and Justice Brennan and Morris v. Slappy, the attorney-client relationship is an intimate, they used the word, an intimate process of constitution and planning which culminates in a state of trust and confidence between the attorney and his client. Now, the Supreme Court has called it an intimate relationship and Morris v. Slappy. I think we would all agree that we're more than just prostitutes. And I think we would all agree that without us, Chad Biggs and the other Chad Biggs of the world and John Hancock without James Otis, might not have led us to this position, or James Otis without his client John Hancock might not have led us to this position or the building of this courthouse. So I think that the attorney-client relationship falls far, far further on the spectrum toward the familial intimate relationship that the 14th Amendment is designed to protect than it does toward the prostitute-John relationship. I'm subject to your questions.
judges: Farris, Reinhardt, Tashima